# BALTIMORE CITY COURT

Filed November 17, 1896.

## VINCENT KABAT

### VS.

## MIECHISLOUS BARABAS.

*Thomas Ireland Elliott, Emmons & Emmons* and *Wm. E. Schlogel* for plaintiff.

*Joseph S. & Charles W. Heuisler* and *Frederick C. Cook* for defendant.

PHELPS, J.—

When a motion for a new trial is made upon the ground of newly discovered evidence, "it must especially be made to appear that the alleged new evidence could not have been discovered in time for the trial by the exercise of reasonable care and diligence."

2 Poe Plead. and Prac., Sec. 338.

As has often been said, there is no

fixed standard of reasonable diligence. It varies with the circumstances of each case. Conduct which would easily pass for reasonable diligence under one set of circumstances might be justly regarded as negligence under another.

The degree of care, for instance, sufficient in crossing an unfrequented country road, would wholly fail to be reasonable diligence in crossing a crowded city street. To bring the application nearer home, the degree of diligence that would be sufficient to support a motion for a new trial upon the ground of newly discovered evidence in a case where the opportunities for procuring evidence have been restricted, would not be sufficient in a case where those opportunities have been exceptionally liberal.

In the trial of this case it cannot be said that the opportunities of procuring evidence by either side were limited. Before the trial commenced, the case had been pending over two years. The controversy was not an ordinary or obscure one. It was one of uncommon notoriety and publicity among the entire Polish Colony in this city of the religious faith to which the parties belong. It involved an unhappy and exciting division in a large congregation of five thousand souls. Dissentions had gone to that extent that scenes of violence were enacted in and around the Church itself. Out of one of these scenes the present suit unfortunately arose. When after long delay and opportunity for elaborate preparation, the trial was reached, it proceeded with unusual deliberation. During the early stages of its progress, it was frequently interrupted by other business, incident to the approaching election. Hosts of witnesses were arrayed against each other, and the examination and cross-examination were protracted and in many cases, excessively minute. Much of the testimony had to be taken through an interpreter, a process which more than doubled the time required. In this way, some weeks of additional opportunity were offered, and the opportunity may therefore be said upon the whole to have been exceptionally ample.

To meet such state of facts, there should be shown a commensurate degree of diligence. Before the Court can be expected to set aside the verdict and order another trial, it should be shown that the exceptional opportunity for procuring all the available testimony has been diligently availed of. And this can only be satisfactorily shown, in a case like this, by setting forth the particular circumstances from which the diligence appears.

The question of reasonable diligence is a matter of opinion upon a state of facts. Conduct which, upon a given state of facts, might appear to one observer as sufficiently diligent, might appear quite otherwise to another, equally honest and equally intelligent, observing from a different standpoint.

Who is to decide this question? Is the party litigant to be left to frame his own standard of diligence, and then to adjudge conclusively, that his own conduct has come up to that standard? Obviously not. The Court should be enabled to see what the conduct of the party has been, in all its particulars, before it can determine whether such conduct conforms to that standard of diligence which, in the opinion, not of the party, but of the Court, adjusts itself to all the circumstances of the particular case.

While the defendant's affidavit would be taken without an instant's hesitation upon any matter of fact within his knowledge, it is otherwise as to matters of opinion, especially when within the peculiar province of the Court. The mere opinion of a litigant that his conduct has been diligent, unsupported by facts, cannot be expected to be conclusive upon the other party, or upon the Court. *Nemo debet esse judex in propria causa.* The motion for a new trial, so far as grounded upon the affidavits of new testimony, cannot be sustained.

As to the objection to the verdict upon the ground of its being contrary to the weight of the evidence, little need be said. The case was one of a direct conflict of testimony upon a visible matter of fact. Was the plaintiff's wife assaulted by the doorkeeper appointed by the defendant? Was she arrested and taken to the station house at his instance, while behaving peaceably? Upon these questions of fact, the testimony was absolutely irreconcilable. It was a question simply of credibility of witnesses. Such a question is one for the jury to decide. Whatever may have been the opinion

of the Court upon this question of fact, the Court cannot set aside the verdict on that ground, without encroaching upon the exclusive province of the jury.

The verdict is finally claimed to be excessive in amount and against the instructions of the Court on the question of damages. Here it is to be particularly noted that this is the action of the husband alone, for such damages as were sustained by him alone in consequence of the beating of his wife.

The instruction of the Court precluded exemplary or punitive damages, and limited the recovery to three elements:

1. Expenses of medical attention: 2. Loss of the wife's services; 3. Loss of the comfort of her society. According to any standard that might be furnished from the testimony, the pecuniary damage from the first two items could not possibly exceed one hundred and fifty, or, at the outside, two hundred dollars. The verdict was for fifteen hundred dollars. The jury have, therefore, estimated the comfort of the wife's society, of which the plaintiff was deprived for a few hours while she was at the station house at about $1,300. The sickness of his wife was due, in a measure, to natural causes. Allowing it to have been increased by the beating there is some deprivation of comfort of society to be added on that score. Difficult as it is in any case to measure in dollars and cents the value of that intangible essence called the *solatium consortii;* it is still more difficult for a jury to exclude altogether from their estimate circumstances of aggravation which attended the loss of *solatium.* Notwithstanding the admitted difficulty, all such circumstances of aggravation they were required by their instructions absolutely to ignore, since the proper occasion for considering those circumstances is upon the trial of the suit brought by the husband and wife jointly for the wife's injuries.

According to the ancient and familiar practice in this State, such instructions are expected to be plainly enforced upon the attention of the jury by counsel and all such difficulties carefully explained, by their application to the facts. If that had been done in this case, there might have been some room for the extreme contention of defendant's counsel that the jury had shown such wilful, and flagrant disregard of the Court's instructions as to discredit the whole verdict and require it to be absolutely set aside, without terms.

But in this case, learned counsel for defendant, than whom there are no more competent advocates at this Bar, thought proper to adopt the policy of silence, and to submit the facts and instructions to the jury without explanation or argument, after an address by the plaintiff's junior. This course is sometimes adopted to shut out a closing appeal to the jury from the plaintiff's leader, but it is not without its risk. It is easy to perceive in this case how the jury, unassisted by the efforts of counsel, without consciously violating the instructions of the Court, have failed to observe the nice distinction required of them between the mere loss of *solatium,* as such, and the circumstances which occasioned it. It was their duty to have excluded those aggravating circumstances entirely from their consideration, in estimating the *quantum* of damages. This they have inadvertantly, but not unnaturally failed to do.

In taking this view of the verdict, the Court has been confirmed by the course of the argument pursued by the learned counsel for plaintiff, in opposing the motion for a new trial. It was observed that on every other point his argument was logical and addressed exclusively to the calm intelligence of the Court. But when he came to defend the verdict upon the tender point of the *quantum* of damage, he lapsed involuntarily into eloquence. "Is there," he exclaimed, "is there a man within the sound of my voice," etc.? And then it came out, that what the man within the sound of his voice was expected to appreciate, and not only to appreciate, but to view with indignation, abhorrence and intense excitement, were those very circumstances

of aggravation that the jury were expressly precluded from taking into account, in the estimate of damage.

There is another feature peculiar to this case which may, in some measure, account for the error in question. A considerable number of prayers were offered on both sides, all of which, with one exception, to be specially noted, were rejected, and in lieu thereof, three short instructions were given by the Court. To these instructions was appended a single prayer of the defendant, marked "granted as modified." The Court's own instructions were plainly written, and were headed "By the Court." The defendant's prayer was typewritten and was headed "Defendant's Eighth Prayer." It was this prayer of the defendant which contained the instructions as to the *quantum* of damage. It is conceivable, that, in the absence of any explanation from counsel, the jury may have given less consideration to the instruction upon the measure of damage because of the peculiar form and connection in which it was thus presented. Of course to a lawyer, or to an experienced layman, such a distinction seems absurd, but to jurors not familiar with the forms of procedure in our Courts, an apparent difference of this kind might have a misleading effect, unless explained. As already stated, no such explanation was made.

Be that as it may, the fact is apparent that there is in this verdict, an element of error which should, in justice, be eliminated. Taking the most extreme view of the evidence from the plaintiff's standpoint, I should have regarded a verdict for $500 as very liberal compensation to the husband alone, considering that the husband and wife's joint claim is in no wise affected.

The motion, therefore, will prevail, unless the plaintiff consents to the reduction named. Whether, in that case, terms will also be imposed upon the defendant, is a matter upon which counsel will have an opportunity to be further heard, if they desire it.